UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAVELERS PROPERTY CASUALTY
OF AMERICA,

        Plaintiff/
        Counter-Defendant,

v.

THE EYDE COMPANY,

        Defendant/
        Counter-Claimant,

and

LOUIS J. EYDE and
GEORGE F. EYDE,

        Counter-Claimants.
_____/

Case No. 5:05-CV-168

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff/Counter-Defendant Travelers Property Casualty of America's ("Travelers") and Defendant/Counter-Claimants The Eyde Company, Louis J. Eyde Limited Family Partnership and George F. Eyde Limited Family Partnership's (collectively "Eyde") competing Motions for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. The Motions have been fully briefed and the Court discerns no reason for oral argument. *See* W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

On June 25, 2005, the roof of a building owned by Eyde collapsed. The building, located at 2110 South Cedar Street in Lansing, Michigan was composed of two wings and a center section. The collaspe occurred only in the center section of the building. The building was completed in the

spring of 2001. (Rundell Dep. 13-15.) The Eyde Company served as the general contractor for its construction. (Clouse Dep. 10.) Prior to the collapse of the center section of the building, there had been no excessive snow accumulation on the roof, or ice damming. (Rundell Dep. 39-41.) Further, there had been no unusual settling, cracking or leaning of the building's walls prior to the collapse. (*Id.*)

It is not disputed that this building was insured by Travelers at the time of the collapse. After the collapse, Eyde submitted a claim to Travelers for coverage. After an investigation, Travelers denied this claim because of a collapse exclusion in its insurance policy.[1] Travelers then filed this declaratory action seeking to have this Court find that the collapse exclusion in the policy prohibits coverage under the policy. Eyde subsequently filed a declaratory action and breach of contract claim against Travelers. Both parties have now moved for summary judgment on the declaratory action.

## II.     LEGAL STANDARDS

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

---

[1] The parties agree that the damage to Eyde's building constituted a collapse under the insurance policy.

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Since both parties have moved for summary judgment on similar grounds, each litigant will be accorded the status of movant and non-movant when applicable. *Lansing Dairy Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.   ANALYSIS**

Travelers argues that it is entitled to summary judgment because Eyde cannot show that the collapse of the building was caused solely by one of the enumerated perils listed in the policy. The relevant policy language states:

> B. EXCLUSIONS
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . .

3

> i. Collapse of Buildings
> Collapse of buildings or structures meaning an abrupt falling down or caving in of a building or substantial part of a building with the result being that the building or substantial part of a building cannot be occupied for its intended purpose...
>
> (2) However we will pay for collapse of buildings or structures if caused **only by one or more** of the following:
>
>> (a) Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; water damage, meaning accidental discharge of water or steam as the direct result of the breaking apart or cracking of a system or appliance containing water or steam;
>>
>> (b) Decay, insect or vermin damage that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
>>
>> (c) Weight of people or personal property;
>>
>> (d) Weight of rain that collects on a roof; or
>>
>> (e) Use of defective material or methods, in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in 1.i.(2)(a) through (d) above, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse.
>
> If collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(Pl.'s Br. Ex. 1 at 9-11) (emphasis added). Travelers argues the fundamental cause of the collapse was a design defect. Therefore, Travelers asserts, pursuant to the plain language in the policy, for

Eyde's collapse to fall within an exception to the exclusion, Eyde must prove the collapse was caused *only by one or more* of the listed perils.

Eyde has also moved for summary judgment arguing it is entitled to insurance coverage for the collapse. Eyde contends the building's collapse falls within the exception to the collapse exclusion quoted above because it was caused after construction was completed by defective methods or materials in construction and in part by the listed perils of hidden decay and/or weight of personal property. Eyde submits that the proper interpretation of the policy language, specifically subsection (e), results in coverage for the collapse of a building whose collapse was caused in part by one or more of the listed perils, even if there were other unlisted causes for the failure. Therefore, as Edye argues that its building collapsed in part because of hidden decay and the weight of personal property after construction, the collapse is covered under subsections (b) and/or (c) of the exception to the collapse exclusion, despite the collapse being caused by admitted perils not listed.

In this diversity case, this Court applies the law of Michigan. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Michigan courts recognize that an insurance policy is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Auto-Owners v. Churchman*, 440 Mich. 560, 566 (1992). Insurance contracts are to be enforced according to their terms, and absent ambiguity in its terms, the language of the contract controls. *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999). A court must not find an insurance company liable for a risk it did not assume, and further, the court should "not create an ambiguity in an insurance policy where the terms of the contract are clear and precise." *Id*. (citations omitted). "Courts cannot simply ignore portions of a contract to avoid a finding of ambiguity or to declare an ambiguity; instead, contracts must be construed so as to give effect to

5

every work or phrase as far as practicable." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467 (2003) (citations omitted). When interpreting terms of a contract, those terms must be given their commonly used meanings. *Henderson*, 460 Mich. at 354 (citation omitted).

Under Michigan law the "insured bears the burden of proving coverage, while the insurer must prove than an exclusion to coverage is applicable." *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 161 n.6 (1995) (quoting *Arco Ind. Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 424-25 (1995)). Travelers, therefore, has the burden of proving that the failure of the building is excluded under the collapse exclusion of the policy. Eyde, however, has the burden of proving that the collapse of the building falls under an exception to that exclusion.

The Court finds that under the plain language of the collapse exclusion, coverage is preconditioned on the collapse being caused by only one or more of the listed perils. Therefore, if any cause of the loss is due to a peril not enumerated under the policy, the collapse is not be covered. In *Pioneer State Mut. Ins. Co. v. Splan*, 2003 WL 1361552 (Mich. App. Mar. 18, 2003), the court explained a nearly identical insurance policy provision, that included the phrase "caused only by one or more of the following." *Id*. at *4. The court reasoned that the policy "provides coverage for a collapse caused by a specific, listed condition, but unequivocally excludes coverage for collapse caused by any other condition not listed in the collapse provision." *Id.*; *see also Suttmann v. Wolverine Ins. Co.*, 1999 WL 33326878 *3 (Mich. App. Dec. 21, 1999). In this situation, the language is just as unambiguous.

Eyde argues that the Court should not interpret the phrase "caused only by one or more of the following" to limit recovery to collapses which were caused by only one or more of the enumerated perils. Eyde asserts that the Court should look to the similar case of *Allstate Ins. Co.*

*v. Forest Lynn Homeowners Ass'n*, 892 F. Supp. 1310 (W.D. Wash. 1995), *op. withdrawn* at 914 F. Supp. 408 (1995)[2], for precedent of this interpretation of a collapse exclusion. In *Allstate*, the court held that the phrases "caused only by one of the following" and "only as insured against in this policy" created an ambiguity.[3] *Id*. at 1315. The *Allstate* court found that by inserting the phrase "only as insured against in this policy," that most of the "Collapse coverage was rendered illusory, because coverage would be added by the Collapse provision, and yet removed again . . ." *Id*. at 1315. The court then held that under Washington state law, the ambiguity required the court to construe the passage in favor of the insured. In the current case, there is no ambiguity, nor is the phrase "only as insured against in this policy" to be found in the insurance policy at issue. As a result, *Allstate* is easily distinguishable from the case at hand.

After a review of the factual record, it is apparent an underlying cause of the collapse was a defective design. Both parties' experts agreed that design "omissions" of the center section of the building led to the ultimate collapse.[4] (*See* Walkowicz Dep. at 62-64, 113; Munsell Dep. at 61.)

---

[2] The opinion was withdraw from publication by motion of the parties. *Allstate*, 914 F. Supp. at 408.

[3] The policy language in *Allstate* stated:
We will pay for risk of direct physical loss involving collapse of a covered building or any party of a covered building *caused only by one or more of the following*:
    (a) Fire; lightning; windstorm; hail; explosion; smoke; aircraft, vehicles; riot; civil commotion; vandalism or malicious mischief...water damage; *all only as insured against in this policy*;
    (b) hidden decay...
*Id*. at 1314 (emphasis in original).

[4] Both experts also agree that the gradual pull out of toe nails from the trusses due to the shifting stresses on the walls and roof, led to the ultimate collapse. (*See* Pl.'s Br., Ex. 6 at 4 & Ex. 8 at 2.) Plaintiff's expert summarizes "the most likely mechanism of failure was the gradual pull out of the toe nails. We believe the existing loads on the building roof caused the roof to rotate on the east wall and there was insufficient nailing or bracing to prevent the wall from

Eyde's own expert admits that at least one of the causes of the collapse was a design defect,[5] an unlisted peril. Therefore, it can be stated with certainty that a peril, which was not a listed peril under the Collapse Exclusion, caused or contributed to the failure of Eyde's building. As a result, under a plain reading of the policy, such a collapse would not be covered.

This does not, unfortunately, end the Court's inquiry. Although Travelers has carried its burden by proving that Eyde's building collapse was excluded under the policy, Eyde argues that its collapse qualifies as an exception to the exclusion under subsection (e). The Court finds two flaws in Eyde's analysis of subsection (e).

First, subsection (e) is neither ambiguous nor subject to multiple interpretations. *Henderson*, 460 Mich. at 354. The pertinent language in the section reads:

> e) Use of defective material or methods, in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation. <u>However, if the collapse occurs after construction . . . is complete and is caused in part by a cause of loss listed in 1.i.(2)(a) through (d) above, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse</u>.

(Pl.'s Br., Ex 1 at 11.) (Emphasis added). Eyde argues the Court should interpret this section as allowing for collapse coverage where the construction of the building is complete, and the collapse is due in part to defective construction materials or methods and in part to an enumerated exception.[6]

---

safely supporting the load." (Pl.'s Br., Ex. 6 at 4.)

[5]The Court notes that Eyde's expert, Scott W. Walkowicz, P.E., states "I believe there were both design and construction omissions that could have been dealt with . . . and that ultimately is one of the factors that would have allowed this collapse to occur." (Walkowicz Dep. at 62.2-62.6.)

[6]The Court notes that both parties' experts agreed that the collapse was due in part to defective construction materials or methods, specifically the toe nails used and certain on-site repairs. (*See* Pl.'s Br., Ex. 6 at 4 & Ex. 8 at 3-4.)

Eyde further asserts that the language "in part by a loss listed" mandates coverage even where a contributing cause for the collapse is a peril not enumerated in the exclusion. The Court finds that this language is precise and unambiguous and Eyde has misconstrued the section for a favorable result.

The first sentence of the section sets forth that a collapse caused by defective methods or materials in construction qualifies as an enumerated peril–before construction is complete. The second sentence modifies the first sentence to the extent that it describes another situation when defective materials or methods in construction would be an enumerated peril–*after* construction (in conjunction with another enumerated peril). This reading is consistent with the "only one or more of the following" language which frames the entire exclusion. To read this section otherwise would result in Travelers becoming liable for a risk it did not assume and moreover a risk it specifically excluded through its policy language. *Henderson*, 460 Mich. at 354. Indeed, were the Court to follow Eyde's logic, Travelers' policy would allow coverage during construction for only enumerated perils and defective construction methods but allow coverage after construction for enumerated perils, defective construction methods and *any other cause*. This interpretation flies in the face of the extremely plain language which frames the exclusion section: "caused only by one of the following." Therefore, even taken in a light most favorable to Eyde, the policy language is clear and there exists no genuine issue of fact as to this language.

Eyde argues that *Southside River-Rail Terminal Inc. v. Crum & Forster Underwriters of Ohio*, 811 N.E.2d 150 (Ohio App. 2004), is consistent with its interpretation of subsection (e). In *Southside*, a court was presented with nearly identical policy language and construction, including the same defective materials subsection. Eyde argues that as the *Southside* court held coverage was

9

appropriate in that case, coverage in this case should also be appropriate. However, the Court notes the *Southside* court held coverage was appropriate where the weight of personal property (an enumerated peril) and defective construction were the causes of a collapse. There was no question of whether a peril not listed was a cause of the collapse as there is in the present case. Therefore, it is not inconsistent for this Court to deny coverage.[7]

Second, at the center of Eyde's argument is a tortured, albeit creative, interpretation of the word "decay." Eyde's expert construed the building collapse as a two step process where design omissions contributed to the gradual weakening of the strength of the building (through the pull out of the toe nails) which ultimately led to its collapse. (Pl.'s Br., Ex 8 at 2 & Walkowicz Dep. at 121-22.) Eyde argues because "decay" is an undefined policy term, the Court should refer to its dictionary meaning; "a gradual decrease in structural strength." *See Stramm Theaters, Inc. v. Hartford Cas. Ins. Co.*, 113 Cal. Rptr. 2d 300, 306 (Cal. App. 2001) (quoting *Merriam-Webster's Collegiate Dictionary*). Eyde posits that the collapse was due in part to the unseen toe nails being slowing pulled from the trusses which gradually decreased the strength of the structure until the ceiling collapsed. Therefore, the cause of the collapse was hidden decay, an enumerated peril.[8]

---

[7]Further, to the extent Eyde relies on *Olde Colonial Village Condominium Council v. Millers Mut. Ins. Co.*, 2002 WL 122885 (Del. Super. Jan. 28, 2002), the Court finds that case distinguishable. In *Old Colonial*, the court evaluated identical policy language and stated "Put another way, the policy provides that if a covered building collapses due to hidden decay, the insurance company cannot deny coverage because defective materials or shoddy construction cause or contributed to the decay." *Id*. at *5. The Court agrees with this analysis as stated above. However, Eyde relies primarily on the following statement, "So, using this case as an example, the way the building was designed and constructed played a part in the joists' premature decay, but that does not justify refusing coverage to the Council." *Id*. The Court finds this analysis unconvincing, in the face of plain language of the policy.

[8]The Court recognizes that Eyde also argues that the collapse was due in part to another enumerated peril, the weight of personal property, namely televisions attached to the ceiling. As

Eyde cites two cases which support its interpretation of "decay," *Stramm Theaters* and *Northeastern Ctr. Inc. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 842396 (N.D. Ind. March 28, 2006). Neither of these cases are binding upon this Court and further, both can easily be differentiated.

In *Stamm Theaters*, a 49-year-old theater collapsed when wood trusses gave way but showed no signs of rot. 113 Cal. Rptr. 2d at 305. The California Court of Appeals reversed a district court's narrow reading of decay as only including organic rot, and adopted the broader definition of "the gradual loss of strength." *Id*. at 306. Despite the court adoption of a broad definition, the court did find an organic type of deterioration to justify its conclusion. The court states, "the collapse of Stamm's theater cannot be attributed simply to the passage of time. Stamm's wood expert . . . believed the roof trusses gave way because of deterioration at the cellular level caused by the migration of water molecules in and out of the wood over the years." *Id*. at 308. In the present case, Eyde's building stood for only four years, not 49, supporting the conclusion that it was primarily design and/or construction errors that led to the toe nails pulling out from the trusses. Eyde has also offered no proof of a different reason for the nails failure besides arguing that it could also be considered a construction defect as well as a design defect. (Walkowicz Dep. at 61-62.) Further, the *Stramm Theaters* court rationalized that the broad definition was appropriate in light of the objectively reasonable expectations of the insured. *Id*. at 306. However, the rule of reasonable expectations for construing insurance policies has been overruled in Michigan under *Wilkie v. Auto-*

---

there is no dispute that this is a covered peril nor over the definition of personal property, and the Court has already found that the correct interpretation of the policy language precludes Eyde from recovering under section (e) for a loss caused in part from a peril not listed, the Court declines to address Eyde's arguments supporting the fact that the weight of personal property may have contributed to the collapse.

11

*Owners Ins. Co.*, 469 Mich. 41, 62 (2003). Therefore, the *Stramm Theaters* courts' analysis is of little use or persuasive value to this Court which is bound by Michigan law.

In *Northeastern Center*, a 90-year-old building was substantially impaired and in danger of imminent collapse when the ties and mortar holding together bricks deteriorated leading to a progressive failure in strength of a wall. *Northeastern Ctr.*, 2006 WL 842396 at *5. In finding the existence of coverage, the court also adopted the broad definition of "decay" as "a progressive failure of strength or soundness, or as a wasting and wearing away." *Id*. The court rejected the argument that the deterioration was caused by a design defect by stating "The Defendant has not carried its burden in showing the materials or designs used were faulty when considered in relation to the time in which the building was built or that a building can be considered defective when it lasted 90 years before structural repairs were necessary." *Id*. at *6. Obviously, the court found that the age of the building lent credibility to the argument that there was a *deterioration* of the ties and mortar rather than merely a design defect.[9] In the present case, Eyde's building stood for less than five years before succumbing to collapse, therefore, depriving Eyde of similar claim.[10]

---

[9]The Court notes Eyde relies heavily upon the passage "A reasonable person could read the policy and conclude that any collapse caused by hidden decay is covered, even if that decay is caused by an excluded factor, such as faulty design. In the Court's view, it is more reasonable to interpret the contract to find coverage for any decay, regardless of cause, when that decay was hidden and caused collapse." *Id*. at *6. However, the Court finds this passage inapplicable to the current case, where the contract language differs and further, where the Court has adopted a narrower definition of "decay."

[10]Although it is apparent Eyde's expert attempts to make such a claim, stating because the building "was erected, passed inspection and stood for several years bears out the fact that the building structure generally 'worked.'" (Pl.'s Br., Ex. 8 at 2.) The Court notes that a building which stands for less than five years before it collapsed, is not a building that "worked" – especially in light of Eyde's insistence that there was a continuous and gradual decline in the strength in the building. It is safe to argue that the building began its gradual decline in strength from the moment construction was complete.

It is important to note that although in both *Stramm Theaters* and *Northeastern Center* the courts adopted a broader definition of decay than merely organic rot, both courts justified their decisions by finding something akin to organic rot at least a partial cause.[11]

Therefore the Court disagrees with the definition employed by Eyde. In the *American Heritage Dictionary*, 1996, "decay" as a verb is defined as "1. *Biology*: to break down into component parts; rot . . . 7. To decline from a state of normality, excellence, or prosperity; deteriorate."[12] As a noun, "decay" is also defined as "a gradual deterioration to an inferior state: *tooth decay; urban decay*." *American Heritage Dictionary* (emphasis in the original). The Court finds that its commonplace or plain English meaning is not a general, gradual decline in strength, but rather, the organic rot or deterioration from a normal state. Such a definition, although narrower than the definition Eyde champions, is not so narrow as to foreclose recovery for situations described in *Stramm Theaters* or *Northeastern Center*. In each of those cases, the cause of the "decay" was at its root, due to the deterioration of a matter from its normal state. Further in both cases, the deterioration involved material degrading from its natural state. In the present case, Eyde argues that the failure of certain nails, which pulled free from a truss due to stress, should be classified as decay. As Gertrude Stein so eloquently wrote, "A rose is a rose is a rose," and such a failure cannot be

---

[11]In *Stramm Theaters* the court found that there was deterioration at a molecular level caused by water damage. *Stramm Theaters*, 113 Cal. Rptr. 2d at 308. In *Northeastern Centers* the court held that the ties and mortar deteriorated in part because of age and exposure to water. *Northeastern Ctr.*, 2006 WL 842396 at *2.

[12]The dictionary further supplies synonyms such as "*rot, putrefy, spoil, crumble, molder, disintegrate, decompose.* These verbs all refer to gradual change resulting in destruction or dissolution." *American Heritage Dictionary*.

properly classified as decay, simply by a will to do so.[13]  Therefore, Eyde has failed to present a genuine issue of material fact and summary judgment is proper.

## IV.    CONCLUSION

Accordingly, the Court finds that there is no coverage for Eyde's loss under the Travelers' insurance policy in question and Travelers properly denied insurance coverage to Eyde.  The Court will grant Plaintiff's Motion for Summary Judgment and deny Defendant/Counter-Claimants' Motion for Summary Judgment.

A Judgment consistent with this Opinion shall issue.

                                          /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:             RICHARD ALAN ENSLEN
       January 9, 2007                 SENIOR UNITED STATES DISTRICT JUDGE

---

[13] Gertrude Stein, GEOGRAPHY AND PLAYS, *Sacred Emily* (1922).